**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JONATHAN MARSHALL, SR.,** | § | |
| **Movant** | § | |
| | § | |
| **V.** | § | **A-09-CA–035-LY** |
| | § | **(A-06-CR-067(1)-LY)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are:  Movant's Motion to Vacate, Set Aside or Correct Sentence Under 28

U.S.C. § 2255 (Clerk's Doc. No. 235) filed January 15, 2009; the Government's Response (Clerk's

Doc. No. 239) filed April 10, 2009; and Movant filed a Reply on May 26, 2009.  The undersigned

submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C.

§636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for

the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate

Judges, as amended.

## I.  BACKGROUND

On April 4, 2006, Jonathan Marshall, Sr. ("Marshall) and Cheryl Abercrombie were charged

with tax fraud in a 40-count indictment.  Marshall was named in every count of the Indictment.

Count One charged Marshall with corrupt interference with internal revenue laws and aiding and

abetting, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2, and counts two through forty charged

Marshall with assisting in filing false income tax returns and aiding and abetting, in violation of 26

U.S.C. § 7206(2) and 18 U.S.C. § 2.

On April 13, 2006, Marshall waived his personal appearance and entered a plea of not guilty to the charges. Initially the Court appointed William Ibbotson, a United States Public Defender to defend Marshall. On May 8, 2006, Marshall moved to represent himself at trial. The Court granted his motion to proceed pro se, but retained Mr. Ibbotson as standby counsel at trial. Marshall represented himself at trial and prior to trial, filing numerous pre-trial motions. Marshall's jury trial began on November 6, 2006, and ended on November 16, 2006, with a verdict by which the jury found Marshall guilty on all forty counts in the Indictment. On February 16, 2007, this Court sentenced Marshall to a 216-month term of imprisonment, a one-year term of supervised release, and $4,000 in assessments.[1] Marshall filed a timely notice of appeal. On January 11, 2008, the Fifth Circuit Court of Appeals dismissed Marshall's appeal for want of prosecution because Marshall failed to timely file his brief and record excerpts. *See United States v. Marshall*, No. 07-50294, slip op. (5th Cir. January 8, 2008).

In this collateral attack on his conviction, Marshall raises twenty-eight grounds of error:

(1)     venue was proper in Dallas, Texas, rather than in Austin, Texas;

(2)     this Court lacked jurisdiction to prosecute him;

(3)     the remedy of immediate termination of imprisonment will be April 22, 2008;

(4)     the maximum sentence that could have been imposed in his case was three years on count one of the Indictment and that all of the other prison time is illegal incarceration;

(5)     his right to a speedy trial was violated because his prosecution began on April 22, 1996, and he was not tried until November 7, 2006;

(6)     he was denied the right to an appeal;

---

[1]On February 9, 2007, the United States filed a motion for upward departure, which was granted at the sentencing hearing.

(7)     the geographics of the grand jury, jury, or venire members contributed to his being convicted;

(8)     because venue was held in Austin rather than Dallas, he was subjected to collateral prejudice because ninety percent of the eligible African American venire members were precluded, which generally impaired his defense;

(9)     a continuance was granted by the Court when it was discovered that the trial could not begin within the 70-day period required;

(10)    his privacy and intellectual property rights were violated when the information relating to his property was released to the government and its affiliated agencies;

(11)    he was not allowed to formulate his defenses and was deprived of his rights under "color of state and federal law;"

(12)    there was evidence that was favorable to him that was not admitted at trial - spanning from 1994 to the time of his trial;

(13)    there is no state or federal tax law that prohibits any citizens convicted of a felony from filing a tax return;

(14)    his sentence was unreasonable and discriminatory, his offense level was clearly erroneous, and the enhancements and obstruction were improper;

(15)    this Court should apply exceptional reasons and order his immediate, unconditional release pending appeal;

(16)    he met the conditions of release pending trial, and the Court erred in denying his pretrial release;

(17)    he has demonstrated diligence and substantial needs and circumstances exist that should entitle him to be allowed to present arguments in an interlocutory appeal;

(18)    the federal and state government and the IRS hid or ignored legal authorities that would have demonstrated his innocence;

(19)    he is requesting an interlocutory appeal and application for release pending appeal;

(20)    his Fourteenth Amendment rights were violated based on a racially biased selective prosecution, he received disparate treatment and his prosecution was improperly motivated;

(21)     because he chose to exercise his freedom of speech, the right to assemble, the right
         to publish, and the right to petition the government, he was retaliated against in the
         form of a prosecution;

(22)     the deficiencies in his appeal and the dismissal of his appeal were based on his lack
         of requested funds;

(23)     the Wizard Services Restoration Fund Act entitled him to file the returns he filed for
         clients;

(24)     he should be compensated $1,210,000 for being wrongfully incarcerated for 11 years;

(25)     improper methods were used by the prosecution for the sole purpose of wrongfully
         convicting him; therefore, he is entitled to a mistrial or reversal of his conviction;

(26)     judicial misconduct;

(27)     he is entitled to challenge the sentence in the instant case pursuant to Sections
         2241/2255 if the current sentence was enhanced by a prior conviction, and he may
         seek relief as long as any of those prior sentences have not been served; and

(28)     pursuant to FED. R. CIV. P. 65(d)(2)(A) or (B), his sentence should be immediately
         terminated.

## II. STANDARD OF REVIEW

Under § 2255, there are generally four grounds upon which a defendant may move to vacate,

set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or

laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3)

the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is

otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under

Section 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed

final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for

the first time on collateral review without showing both 'cause' for his procedural default, and

'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir.

1991).  If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994)

In this case, Movant represented himself on appeal with the help of standby counsel. Ultimately his appeal was dismissed.  "[A] 'collateral challenge may not do service for an appeal'" *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc).  Since Marshall could have raised his jurisdictional or constitutional issues on direct appeal, he may not raise them for the first time on collateral review unless he shows cause for his procedural default and actual prejudice resulting from the error or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. *See id.* at 232.  To satisfy the "cause" standard, a petitioner must "show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (citations omitted).  In the event the error is not of constitutional or jurisdictional magnitude, the defendant must show that the error could not have been raised on direct appeal, and if allowed to stand, would result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir.1994).  In this case, Marshall has failed to establish "cause" for his procedural default or resulting prejudice.  Because Marshall has failed to overcome the procedural bar, he is not entitled to relief on any of his claims. *See Shaid*, 937 F.2d at 232.  However, because Marshall was proceeding essentially *pro se* at trial and on direct appeal, out of an abundance of caution, the Court addresses the merits of his claims below.

### III.  ANALYSIS

### A.      Venue

Petitioner's first argument is that venue in the Austin Division of the Western District of Texas was not proper and that he should have been indicted and tried in Dallas. Article III, section 2, clause 3 of the United States Constitution provides that "The Trial of all Crimes, except in Cases of Impeachment, shall be . . . held in the State where the said Crimes shall have been committed. . . .." The Sixth Amendment expands this rule and expresses it as a right of the accused by providing that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed. . . ." U.S. Const. amend. VI. In addition, the Federal Rules of Criminal Procedure ensure this constitutional right by providing that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." Fed.R.Crim.P. 18. These provisions reflect that in criminal cases the question of venue is not a legal technicality, but instead is a significant matter of public policy. *United States v. Johnson*, 323 U.S. 273, 276 (1944).

At trial it was demonstrated that in about 2000, Petitioner Marshall, while incarcerated in the Dallas County Jail, solicited other inmates to prepare their tax returns. He devised a scheme in which inmates qualified for earned income credit by using false dependents and false Schedule C income and expenses. Marshall then charged a large percentage of the improper tax refunds as his fee. He also used this same strategy for preparing the taxes of other individuals who were not incarcerated. Marshall's sister Cheryl Abercrombie aided his tax fraud by agreeing to use her address in Temple, Texas, on the tax returns, instead of the inmates' addresses in the Dallas County Jail. Use of Abercrombie's address allowed Marshall to disguise the fact that the income tax returns were filed on behalf of inmates. Marshall also used Abercrombie's address as the taxpayers' address

in the preparation of tax returns for various inmates.[2]  Abercrombie also received return information

from Marshall, forwarded returns to the IRS, filed her own fraudulent return, received IRS refund

checks, and forwarded monies, all of this from her Temple address, which is located in the Western

District of Texas.  The fraudulent tax returns were ultimately received and processed through the

Internal Revenue Service Center in Austin, Texas.  After Marshall was released from state jail in

May of 2003, he moved to Luling, Texas, also in the Western District of Texas.  There, he continued

to defraud the Internal Revenue Service by creating and filing false tax returns, which he prepared

and mailed from his home in Luling.  On these returns, Marshall falsely listed his post office box in

Luling, Texas, as the taxpayers' address so that he received all refund checks.

18 U.S.C. § 3237(a) provides that venue is proper in any district where an offense was begun,

continued, or completed and that if that offense involves "use of the mails" the offense can be

prosecuted in any district through which the mail moves.  Subsection (b) of this statute provides an

exception to this general rule for certain violations of the Internal Revenue Code, including those

for which Marshall was convicted.  That subsection states:

> Notwithstanding subsection (a), where an offense is described in section 7203 of the
> Internal Revenue Code of 1986, or where venue for prosecution of an offense
> described in section 7201 or 7206(1), (2), or (5) of such Code (whether or not the
> offense is also described in another provision of law) is based solely on a mailing to
> the Internal Revenue Service, and prosecution is begun in a judicial district other than
> the judicial district in which the defendant resides, he may upon motion filed in the
> district in which the prosecution is begun, elect to be tried in the district in which he
> was residing at the time the alleged offense was committed: Provided, That the
> motion is filed within twenty days after arraignment of the defendant upon indictment
> or information.

---

[2]These included Mitchell Marshall, Michael Marshall and Tonya D. Newman, as well as
Abercrombie's own fraudulent income tax return.

18 U.S.C. § 3237(b). This exception provides that a defendant may "elect to be tried in the district in which he was residing at the time the alleged offense was committed" in cases where venue for prosecution "is based solely on a mailing to the Internal Revenue Service, and prosecution is begun in a judicial district *other than the judicial district in which the defendant resides*." *Id.* (emphasis added).

This exception does not apply to Marshall for various reasons. First, he did not move for a change of venue on this basis within the required 20-day time period. Second, prosecution of Marshall was begun in the district in which he resided at the time of indictment. He lived in Luling, Texas, located in the Western District of Texas after his release from prison, and, relevant to the statutory language, at the time of his indictment. He also committed various counts of tax fraud while residing in Luling. Lastly, prosecution in the Western District of Texas was not based solely on the mailing of the fraudulently filed returns to the Internal Revenue Service in Austin, Texas. The record shows that the fraudulent tax returns Marshall prepared while incarcerated were all sent to his sister in Temple, Texas, located in the Western District of Texas, and that refund monies received on these returns were also received in Temple and forwarded from Temple by his sister. Marshall was tried in the appropriate judicial district pursuant to the statute and this claim fails.

**B.    Jurisdiction**

Movant re-asserts his argument that he should have been prosecuted in Dallas, in the Northern District of Texas, arguing that this Court did not possess jurisdiction over him because he is "not a person" and "counts 2-40 are not a thing within its territory." *See* Petition at p. 76. This is largely another incarnation of the venue argument made above with a different label and fails for the reasons set forth above.

Regarding any claim about the Court's jurisdiction, 18 U.S.C. § 3231, provides "the district courts of the United States shall have original jurisdiction, regardless of the courts of the States, of all offenses against the laws of the United States." This is sufficient to confer subject matter jurisdiction on the federal district court. *See United States v. Williams*, 341 U.S. 58, 65 (1951) (noting that "[t]he District Court had jurisdiction of offenses against the laws of the United States ... hence it had jurisdiction of ... the persons charged") (citations omitted).

Additionally, the District Court had personal jurisdiction over Marshall by virtue of Marshall having been brought before it on a federal indictment charging a violation of federal law. *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003) (citing *United States v. Alvarez-Machain*, 504 U.S. 655, 659-70 (1992)); *see also United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991) ("It is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained.")

Notably, Petitioner cites to 28 U.S.C. § 3231 in support of his argument. Because of his reliance upon the statute, Petitioner seems to be making an argument previously made by other individuals convicted in federal court. This argument is that Public Law 80-772 was not validly enacted because it did not pass both Houses of Congress and therefore the sentence imposed in this case pursuant to 28 U.S.C. § 3231 is ultra vires, having never been authorized by a valid Act of Congress.

Several courts have already rejected other incarnations of this claim. *United States v. Collins,* 510 F.3d 697, 698 (7th Cir. 2007) (argument "that Title 18 – the federal criminal code – is unconstitutional because of supposed irregularities in its enactment" is "unbelievably frivolous"); *United States v. Armijo*, 314 Fed. Appx. 113, 114 (10th Cir. 2008) (unpub.); *United States v.*

*Abdullah*, 289 Fed. Appx. 541, 543 n. 1 (3d Cir. 2008) (unpub.); *Cardenas-Celestino v. United States*, 552 F.Supp.2d 962, 966-68 (W.D. Mo. 2008) (collecting and discussing cases); *U.S. v. Sledge*, 2007 WL 2071817, *3 (W.D.La. May 30, 2007); *Lister v. United States*, 2006 WL 3751324, *1-2 (N.D. Tex. Dec. 20, 2006) (finding as a matter of fact that Public Law 80-772 did indeed pass both houses of Congress and was signed into law by President Truman on June 25, 1948).[3] This court rejects Marshall's claim based upon this same reasoning.

C.    **"Remedy of Immediate Termination of Imprisonment Will Be April 22, 2008"**

It is not at all clear what the Movant is arguing here. To use the words he used when he stated this ground for relief, he argues that:

> the provisional and final remedy of immediate termination of term of imprisonment and supervised release will be April 22, 2008 – satisfaction-date and total years accredit = 25.5 years.

*See* Grounds for Relief at 1 of 10. As best the Court can tell, it appears that Marshall is seeking to receive credit toward his federal sentence for time he spent in state custody decades before he even committed the federal offenses. There are many reasons why this argument is baseless, the most obvious of which is that it makes absolutely no sense. Time spent in prison in the past for

---

[3]In *United States v. Smith*, 2008 WL 2674854 (S.D. Ohio July 7, 2008), that Court rationalized that "From the First Judiciary Act to the present, Congress has provided in the Judicial Code that in certain instances the jurisdiction of the federal courts shall be exclusive of the courts of the several states." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D, § 3527. The Ohio court stated "It is beyond historical dispute that the exclusive jurisdiction of the federal courts over federal offenses goes back to the First Judiciary Act. to wit, the Act of Sept. 24, 1789." (Relying upon HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM at 424 (5th ed.2003)). The Court succinctly stated that "If the Court then assumed that Defendant was correct and the 1948 codification of federal criminal law was not validly enacted, the prior provision stemming from the First Judiciary Act would still be effective. Simply put, if the replacement was not validly enacted, the original would still be in place." This Court finds this rationale compelling and that this claim fails on this additional basis.

completely unrelated charges does not somehow become a credit one can apply to a new sentence received for committing a new crime. Not surprisingly, there is authority for this rather obvious concept: "A federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980).[4] Petitioner's federal sentence commenced on the date it was pronounced, February 16, 2007. There is no mention of it running concurrent with any other sentence, and Marshall makes no argument that he was subject to a state sentence at the time he was sentenced in federal court. Rather, he is seeking to receive credit for past prison time for an unrelated state crime. He is not entitled to any credit for an unrelated state incarceration, which he already served.

Further, to the extent he is seeking some sort of *nunc pro tunc* designation as permitted by caselaw and 18 U.S.C. § 3621(b), his request is misplaced. This concept only applies when a petitioner is in state custody, and has also been sentenced to federal time to run concurrent with the state sentence. In that circumstance, courts have ruled that the Bureau of Prisons has the authority to designate the state prison as the place for service of the federal sentence, thereby permitting the petitioner to get credit toward his federal sentence for the time he is spending in state custody. *See McCarthy v. Doe*, 146 F.3d 118, 123 (2d Cir. 1998). This concept has no application here, however, as Marshall is in federal, not state, custody, and there is no question of him receiving credit toward his federal sentence for the time he is presently spending in the BOP.

### D.    The Court Exceeded the Maximum Statutory Sentence

---

[4]*See also Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006) (federal sentence could not commence prior to date of sentencing); *Demartino v. Thompson*, 116 F.3d 1489, 1489 (10th Cir. 1997) (same).

Marshall next argues that only the first charge in his Indictment is legally binding, that the sentence for that charge is three years, and thus he should be released. He apparently bases this argument on the theory that venue and jurisdiction was lacking for all but the first charge. As addressed above, these arguments have no merit. Thus any argument that the Court's sentence on these other counts was void is likewise without merit. Marshall was convicted of 40 counts of tax fraud, each of which carried a maximum 3-year sentence, and his sentence of 18 years was well within the statutory maximum.[5]

### E.    Speedy Trial Violation

Marshall asserts that his right to a speedy trial was violated because his prosecution began on April 22, 1996, and he was not tried until November 7, 2008. He claims that this violated the Speedy Trial Act, his due process rights, right to equal protection, and right to be free from cruel or excessive punishment.

The Speedy Trial Act requires that an indictment or information be filed against the accused within 30 days of his or her arrest or the date he or she was served with a summons, and further requires that in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense must commence within 70 days from the filing date of the information or indictment, or from the date the defendant has appeared

---

[5]To the extent that this claim could be construed to be a complaint that the district court improperly departed upward from the sentencing guidelines, a district court's technical application of the Sentencing Guidelines does not give rise to a constitutional issue cognizable under Title 28 U.S.C. § 2255. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Faubion*, 19 F.3d 226, 232-33 (5th Cir. 1994); *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), cert. denied, 500 U.S. 924 (1991). Accordingly, any claim that the district court erred in departing upward from the sentencing guidelines is not cognizable under § 2255.

before a judicial officer of the court in which such charge is pending, barring periods of excludable delay.  18 U.S.C. § 3161, *et seq.*.

Marshall was indicted in April of 2006, and made his first appearance on April 10, 2006.  He was set for trial on June 5, 2006, well within the 70 day deadline set by the Act.  He moved for a continuance of his trial on May 23, 2006.  The Speedy Trial Act expressly excludes the time when either the defendant, the defendant's counsel, or the government attorney requests a continuance of the trial from the computation of time for speedy trial purposes.  18 U.S.C. § 3161(h)(7)(A).  The district court granted the motion and found that the ends of justice were served by granting his motion and outweighed his interest and the public's interest in his receipt of a speedy trial.  The trial court made a specific finding that the period of delay resulting from the continuance was excludable under the Speedy Trial Act.  Second, Marshall filed voluminous pre-trial motions,[6] and the Court held various hearings on those motions.  The Act provides that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion" is excludable for purposes of the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).  When the periods attributable to the motions are excluded, as well as the delay from the continuance considered, Marshall's trial date of November 6, 2006, was well within the dictates of the Act.  This claim fails.

**F.      Denial of Right to Appeal**

---

[6]The record reflects that Marshall filed at least 23 separate pre-trial motions, at varying times prior to the November trial.

Movant argues next that he was denied the right to appeal because of his lack of funds.[7] On October 16, 2007, Marshall moved the Fifth Circuit for CJA funds in the amount of $943.36 for various expenses he incurred for "legal activities." *See* Record of Appeal, Motion at p. 9. He asserts that these expenses directly related to his "interlocutory and direct appeal." On November 8, 2007, Marshall moved to supplement the record with various documents. On November 19, 2007, the Fifth Circuit Court of Appeals notified Movant that his appeal was deficient for failure to file his brief and failure to file record excerpts. The Fifth Circuit afforded Marshall 15 days to correct these deficiencies or his appeal would be dismissed. On November 20, 2007, Marshall moved to extend the time to file his brief "pending disposition of availability of the facts on which the contentions rest." *See* Record of Appeal, Motion at p. 3. This Motion was denied on November 26, 2007. The record reflects that Marshall's appeal was dismissed for lack of prosecution on January 8, 2008.

The record reflects that Marshall was acting *pro se*, but was also represented by "standby" counsel, Philip J. Lynch., of the Federal Public Defender's office in San Antonio. In a letter to Marshall dated September 18, 2007, Mr. Lynch stated: "I have made arrangements for the district court clerk to ship you the record on appeal. I hope that it will arrive soon. I had the district clerk send the exhibits to me; I will have copies made and send the copies on to you." *See* Petition at p. 40. In a second letter to Marshall dated November 27, 2007, Mr. Lynch stated:

> I received a copy of the Fifth Circuit's order denying your request for a stay or extension. I would suggest that you file what you have prepared now with the court of appeals. That way you will prevent the appeal from being dismissed. You could consider filing a motion to file a supplemental brief at a later time.

---

[7]Movant asserts that the federal district courts in Austin and Dallas erred on evidentiary rulings and non-rulings on alleged motions to return property. There is no record of a motion made in the Austin division regarding any motion to return property. Moreover, Marshall has not connected any ruling on his property to the dismissal of his appeal.

*See* Petition at p. 47. Marshall has failed to claim that he requested that counsel make copies of the record for him and failed to do so. He simply requested CJA funds for copies he made in prison. He makes no explanation for his failure to file his appellant's brief.

Marshall's appeal was dismissed for failure to file a brief—he was not denied the right to file an appeal as he claims. Marshall's Notice of Appeal was docketed on March 8, 2007. The Fifth Circuit docketed all his motions and granted him one extension of time to file his brief. The Fifth Circuit warned him that his appeal was about to be dismissed and Marshall still failed to file his brief. Marshall was able to file various lengthy motions with the Court of Appeals prior to this deadline. There is no tenable reason why Marshall could not file an appellate brief, especially in light of his prior filings. Also, Marshall was acting *pro se* with the assistance of standby counsel. That counsel urged him to file a timely brief and made himself available for copies. The record suggests that Marshall failed to avail himself of counsel's advice or offers for copies. Thus any failure to file appropriate documents with the Fifth Circuit is entirely Marshall's own fault. Moreover, there is no precedent requiring the Fifth Circuit to supply an indigent *pro se* prisoner with CJA funds into his inmate account.

Lastly, there is no constitutional right to appeal a criminal sentence. *Jones v. Barnes*, 463 U.S. 745 (1983); *see also United States v. Melancon*, 972 F.2d 566, 567 (1992) ("The right to appeal is a statutory right, not a constitutional right."). Relief requested under § 2255, "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). A 2255 motion is not a vehicle to collaterally attack the validity of an appellate court's order or decision—it is a vehicle to address the

constitutionality of the Movant's sentence in limited circumstances. 28 U.S.C. § 2255. Thus, this

claim is not cognizable upon habeas review. *See United States v. Jones*, 2008 WL 352492 (S.D.

Miss. 2008).[8]

### G.     Grand Jury Issues

Marshall next argues that his due process and equal protection rights were violated by the

composition of the grand jury that indicted him. He alleges that he was discriminated against on the

basis of his race and his equal protection rights were violated through the use of jury sharing, jury

shuffling, and "pre-emptory challenges in pre-trial and voir dire." *See* Petition at p. 82. The Court

notes that complaints of jury shuffling, preemptory challenges and *Batson* claims are applicable in

the context of a petit jury and not a grand jury. Thus the claims are impossible to address in the

context of Marshall's complaint about the composition of the grand jury that indicted him, because

they are inapplicable to a grand jury.

In general, "it is the policy of the United States that all litigants in Federal courts entitled to

trial by jury shall have the right to grand and petit juries selected at random from a fair cross section

of the community in the district or division where the court convenes." 28 U.S.C. § 1861. Section

_____

[8] To the extent that Movant alleges that he was denied his right to access to the courts, to make that claim he must demonstrate prejudice by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The right of access to the court is not unlimited, but "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging . . . convictions or conditions of confinement." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). A review of the appellate record shows that Movant had ample opportunities to file his appellate brief. *See* Fed. R. App. P. 26(a)(1). He was granted an extension of time, and despite a warning from the court and his standby counsel, he failed to timely file his appellate brief and instead requested yet another extension. The facts alleged by Movant do not rise to a constitutional infringement on the right of access to the courts. *See Christopher*, 536 U.S. at 415 *Jones*, 188 F.3d at 325; *United States v. Liedtke*, 107 Fed.Appx. 416 (5th Cir. 2004).

1867 of Title 28 provides a mechanism for challenging compliance with grand jury selection procedures—the criminal defendant must move to dismiss the indictment or stay the proceedings before voir dire or within seven days after the defendant discovered or could have discovered the substantial failure to comply with Title 28 in selection a grand jury or petit jury. 28 U.S.C. § 1867(a). A substantial failure "destroys the random nature or objectivity of the selection process." *United States v. Olaniyi-Oke*, 199 F.3d 767, 772 (5th Cir. 1999). In addition, to establish "a prima facie violation of the fair-cross-section requirement," the defendant must show (1) that the group alleged to have been excluded is a "distinctive" group in the community; (2) that the representation of this group . . . is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process. *Id.* at 773. A defendant does not "establish a prima facie violation by relying solely on the composition" of the jury assembled in his case. *Id.*

In this instance, Marshall did move to dismiss the indictment. Further, his assertion that his grand jury had defects in its composition is unsupported by any evidence. He relies upon his pre-trial motions regarding this issue, but most of these motions are blank. *See, e.g.,* "Challenges to Selection or Composition of Grand Jury" (Clerk's Doc. No. 142). However, even if Movant could show the alleged defects in the composition of his grand jury, such alleged defects would be insufficient to successfully establish a prima facie violation of the fair-cross-section requirement. Marshall has not shown any failure that destroyed the random nature or objectivity of the grand jury selection process.

Additionally, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Federal district courts exceed their "powers in dismissing

an indictment for prosecutorial misconduct not prejudicial to the defendant." *Id.* at 255. "Errors before the grand jury will often be deemed harmless if the defendants were subsequently and properly convicted before an impartial petit jury." *United States v. Flores-Rivera*, 56 F.3d 319, 328 (1st Cir. 1995). "[T]he fact that the defendants were convicted by a petit jury acts as a cure for any error which may have resulted during grand jury proceedings." *United States v. Valencia-Lucena*, 925 F.2d 506, 511 (1st Cir. 1991). In this case, Marshall was convicted by a petit jury.

### H. Austin Venue Caused Jury Venire Members to Include Fewer Minorities As Opposed to Dallas Venue and Prejudiced Defense in Other Ways

This argument rehashes the venue arguments already addressed earlier, and the Court refers to its analysis in Section A above to demonstrate that venue was proper in the Western District of Texas. Marshall also seems to argue that the Austin venue prejudiced his defense because of the composition of the jury and jury pool. He submits no evidence of the composition of the jury and/or jury pool. Moreover, claims of racial discrimination in jury selection are analyzed utilizing the three-step procedure established by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). In the first step, "the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." *Rice v. Collins*, 546 U.S. 333, 338 (2006). Here, Marshall does not argue that the prosecutor made any such a peremptory challenge, thus any claim about the make-up of the jury fails.

### I. Case Should have Been Dismissed Because of Continuances

Marshall next argues that the case against him should have been dismissed with prejudice because the district court granted continuances in violation of the Speedy Trial Act. As already addressed above, the Speedy Trial Act was not violated in this case, and this argument is baseless.

## J.      Privacy and Intellectual Property Violations

Marshall argues that his property rights were violated in the course of the investigation into his criminal acts and trial. He cites to Federal Rule of Criminal Procedure 41(e) and 16(a)(3) in support.[9] Marshall seems to mix a complaint that his property rights were violated by the seizure of his copyrighted and "specially commissioned" work, with a claim that the Government failed to allow him copies of "rooms full of data never allowed to be used as discovery." First, any violation of his property rights are outside the context of his habeas petition. Second, Marshall fails to identify what materials, if any, the Government failed to disclose.

Marshall's main complaint seems to be that the Government seized his property and failed to return it. However, Marshall failed to move for the return of his property pursuant to FED. R. CRIM. P. 41(g). A Rule 41(g) motion that is brought after the criminal proceeding is over is treated as a civil equitable action for return of property. *Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007) (citing *Taylor v. United States*, 483 F.3d 385, 387 (5th Cir. 2007)). Such an action is inappropriate for inclusion in a federal habeas proceeding such as the instant case. And with regard to the Rule 16(a)(3) argument, as mentioned in the footnote, that rule excludes grand jury transcripts from the realm of information discoverable by a criminal defendant. Marshall completely fails to connect that rule to his alleged privacy or intellectual property arguments.

## K.      Inability to Formulate Defenses

Marshall argues that he was not allowed to formulate a defense to his crimes due to invidious discrimination against African-American citizens. He alleges that the district court, prosecution, and

---

[9]Rule 41(e) addresses the issuance of a search warrant. Rule 16(a) deals with various discoverable items that the Government must, upon request, disclose or furnish to a criminal defendant before trial, and Rule 16(a)(3) specifically excludes grand jury transcripts from production.

Internal Revenue Service engaged in a racist conspiracy against him. Marshall also alleges he did not commit any crime and merely used the tax laws as Congress intended. Leaving aside the complete lack of evidence that the prosecution was racially motivated, the Court notes that Marshall was afforded a federal public defender at no charge to him and yet chose to represent himself at trial and upon appeal. He presents no basis for his claim that he was not allowed a defense—he insisted on providing his own. This claim is meritless.

### L. Failure to Turn Over Discovery

Marshall next argues that his constitutional rights at trial were compromised when the Government failed to disclose discovery materials pursuant to FED. R. CRIM. P. 12.2, 41(e), 16 and 26.2; the Jencks Act, 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. He alleges that "the discovery material is actually the property of Jonathan (Joe) Marshall, Sr." *See* Petitioner's Brief at p. 87. He is essentially alleging prosecutorial misconduct for failure to turn over discovery.

First, this issue is procedurally barred. Marshall could have raised it on appeal and did not. Second, "The Jencks Act and *Brady* and its progeny govern the production by the Government of prosecution witness' pre-trial statements and favorable evidence to the defense which are in the possession of the Government." *United States v. Beckford*, 964 F.Supp. 1010, 1013 (E. D. Va.1997). Marshall has pointed to no evidence that was favorable to him that the Government failed to disclose to him. Moreover, the evidence he is complaining about is not witness statements or other potentially exculpatory statements, but appears to be about his own property, presumably the business records of the enterprise through which the jury found he defrauded the Government. Marshall has failed to establish that the Jencks Act, *Brady, Giglio* and its progeny are applicable to

this evidence. Lastly, Marshall would have already been aware of any helpful evidence contained in his own records. His failure to point out any specific exculpatory evidence of which he was unaware before trial undermine this claim.

### M. Right to File A Tax Return

Marshall argues that there is no federal or state law that an individual in custody may not file a tax return. Seemingly, he is arguing that he is actually innocent of the tax fraud crimes for which he was convicted.

Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a § 2255 motion that he raised on direct review. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Put differently, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal. *Id.* But courts will exempt a movant from that rule if he can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default. *Id.* at 622.

In this case, Marshall argues that his acts were not illegal because filing a tax return while imprisoned is not illegal. The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not just legal insufficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted). Marshall cannot do so. The record shows that Marshall was convicted of several counts of filing *fraudulent* tax returns while he was in prison. Thus, his claims

amount to legal insufficiency rather than factual innocence. The actual innocence exception does not apply and this claim fails.

### N. Claim that Sentence Is Unreasonable and Discriminatory

Marshall next claims that his 18 year sentence is unreasonable and discriminatory. Marshall was convicted of 40 counts of tax fraud with each count carrying a potential three year sentence. Marshall was sentenced to 216 months. The district court "stacked" the first five counts and sentenced Marshall to concurrent sentences for the remainder of the counts. The reasonableness of a district court's upward departure from a Guidelines sentence is an issue for direct appeal. Claims that could have been, but were not, raised on direct appeal are procedurally defaulted and generally not cognizable in habeas review. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Following *United States v. Booker*, 543 U.S. 220 (2005), sentences are reviewed by appellate courts for reasonableness in light of the sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Mares*, 402 F.3d 511, 519-20 (5th Cir. 2005). Reasonableness review, in the context of a Guidelines departure, requires an appellate court to evaluate both the decision to upwardly depart and the extent of the departure for an abuse of discretion. *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir.2006). An upward departure is not an abuse of discretion if the reasons for the departure advance the objectives of § 3553(a)(2) and are justified by the particular facts of the case. *Id.*

In this case after the United States Attorney moved for an upward departure. The district judge found that there was a strong likelihood that Marshall would continue his criminal conduct upon release from custody; that in 1987 he had previously been convicted in an identical federal offense of 27 overt acts and was sentenced to 15 years in custody; Marshall immediately began more overt criminal acts once released from custody; his previous 15 year sentence was not a deterrent;

that the instant crime involved 40 overt acts; Marshall's criminal history category was under-represented and that a total offense level of 32, criminal history category VI, for a guideline range of 210 to 262 months was more appropriate for a person with Marshall's history. The Court found that due to the extreme facts of the case and in the interest of deterrence, Marshall needed to serve a sentence greater than his prior 15 year sentence. Notably, the district court could have sentenced Marshall to a statutory maximum of 120 years or 36 months multiplied by the 40 counts for which he was convicted. In *United States v. Myers*, 2009 WL 1426915 (5th Cir. 2009), the appellate court found that in light of the under-representation of that defendant's prior criminal history, the number and nature of prior offenses, and increasing seriousness of the offenses, the district court did not abuse its discretion in imposing an upward departure and that sentence was reasonable. It is plain that the district court's upward departure was reasonable in this case, and Marshall has failed to establish an entitlement to relief on this claim.

O.     **Immediate Release for Exceptional Reasons**

Marshall argues that he should be immediately released pending his appeal based upon "exceptional reasons." He argues that he should be released because of the length of his combined state and federal sentence is cruel and unusual.

First, Marshall's appeal is no longer pending as it was dismissed for want of prosecution. Release on bail pending a collateral review such as this is appropriate only when the petitioner has raised a substantial constitutional claim upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective. *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974). Extraordinary circumstances include (1) a serious deterioration of a movant's health while

23

incarcerated, (2) short sentences for relatively minor crimes so near completion that extraordinary action is necessary to make collateral review effective, and (3) extraordinary delay in processing a § 2255 motion. *Id.* at 701 n.1. Marshall has failed to argue or proffer evidence of any of these reasons.

Second, the length of his combined state and federal sentences is of no moment and does not constitute cruel and unusual punishment pursuant to the Eighth Amendment. Marshall was released from state prison before he was prosecuted for his federal crimes. Marshall's federal sentence stands alone for purposes of his Motion to Vacate. Further, Marshall's argument is insufficient to raise a reviewable issue because he has provided no supporting facts. *See United States v. Pineda*, 988 F.2d 22, 32 (5th Cir.1993) (per curiam) (holding that "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") Even if Marshall presented factual support for this Eighth Amendment claim, however, Fifth Circuit precedent forecloses his arguments. The standards for finding punishment in violation of the Eighth Amendment include "(1) whether the conditions of confinement shock the Court's conscience; (2) whether the sentence imposed is grossly disproportionate to the offense; or (3) whether the sentence imposed offends evolving notions of decency." *Cerrella v. Hanberry*, 650 F.2d 606, 607-608 (5th Cir.) (per curiam) (citing *Newman v. Alabama*, 503 F.2d 1320, 1330 n. 14 (5th Cir. 1974)), cert. denied, 454 U.S. 1034 (1981).

The Fifth Circuit has long held that a sentence within the statutory limits is not cruel and unusual. *United States v. McKinney*, 53 F.3d 664, 678 (5th Cir.) (finding no violation of the Eighth Amendment prohibition against cruel and unusual punishment where defendants were sentenced within the applicable guidelines range) cert. denied, 516 U.S. 901 (1995); *Cerrella*, 650 F.2d at 607-8 (finding that the defendant's sixteen-year sentence was not grossly disproportionate to the

offense committed where the maximum permissible sentence was twenty years); *Castle v. United States*, 399 F.2d 642, 652 (5th Cir. 1968) (citing *Hedrick v. United States*, 357 F.2d 121 (10th Cir.1966)). The district court sentenced Marshall to 216 months of imprisonment after a jury found him guilty of 40 counts of tax fraud. He has a prior conviction for very similar conduct. Each of the counts of tax fraud for which he was convicted carried a maximum sentence of three years, for a total statutory maximum of 120 years. The record shows that the Court reviewed the PSR and considered all of the relevant factors. Although the district court did depart upward from the Guidelines range, the sentence was still well below the statutory maximum.

Because Marshall was sentenced within the statutory limits, he has failed to show that his sentence shocks the conscience. Therefore, Marshall has also failed to show that his rights under the Eighth Amendment were violated. In comparison to the life sentence imposed in *Rummel v. Estelle*, 445 U.S. 263 (1980), on a nonviolent criminal pursuant to a recidivist statute, Marshall has not shown that the 216-month sentence was grossly disproportionate to the offense. *See United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997); *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992). Compared to the evidence adduced during sentencing and the range of punishment, Marshall has failed to show that the punishment exceeds the gravity of the corresponding offense. *See Rummel,* 445 U.S. at 283-85 (mandatory life sentence did not constitute cruel and unusual punishment where defendant was convicted of obtaining $120.75 by false pretenses, but had two prior felony convictions-emphasizing that recidivist statutes punish not only the offense at issue, but also the propensities of the defendant demonstrated by prior convictions). This claim fails.

      **P.**       **Release on Bail Pending Trial**

Marshall argues that he met the conditions for release pending trial and that the district court improperly failed to not release him on bond. Marshall has already been tried and convicted of the crimes for which he was indicted. Accordingly, this claim is moot. *See Fassler v. United States,* 858 F.2d 1016 (5th Cir. 1988) (holding motion for habeas corpus requesting release from pretrial confinement mooted by defendant's conviction and subsequent detention.) Marshall fully litigated this issue prior to trial, where he had an extended evidentiary hearing on bond. He also appealed the magistrate judge's decision denying release to the district judge, who upheld the magistrate judge's decision. This claim is baseless and fails.

**Q.** **Interlocutory Appeal**

Marshall asserts that he left "blanks" in various pre-trial motions filed with the district court and that he now has the right to assert an interlocutory appeal on various issues. The Fifth Circuit Court of Appeals has jurisdiction over: (1) final orders (28 U.S.C. § 1291); (2) orders that can be properly certified as final (Fed.R.Civ.P. 54(b), 28 U.S.C. § 1292(b)); and (3) specific interlocutory appeals (28 U.S.C. § 1292(a)(1)). *See Dardar v. Lafourche Realty Co., Inc.*, 849 F.2d 955, 957 (5th Cir. 1988). A "final decision" under § 1291 "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Frizzell v. Sullivan*, 937 F.2d 254, 255 (5th Cir. 1991) (quotation omitted). In this case, the district court's orders with which Marshall takes issue are part of his final judgment and conviction and were subject to a direct appeal. Marshall's appeal was dismissed for want of prosecution. No interlocutory appeal of orders entered prior to trial in the district court is available once a final judgment is entered. This claim fails.

**R.** **Hidden Legal Authorities**

Marshall next argues that the IRS, federal government, and the State of Texas hid or ignored legal authorities, rules, statutes and records that would demonstrate his innocence. Marshall is arguing that his tax fraud scheme was in fact a legitimate business and blames the authorities for his predicament. Marshall was indicted for forty counts of tax fraud. The evidence at trial demonstrated that he filed dozens of patently false tax returns, with fictitious dependents and deductions, from which he gained substantial profit. He was convicted of these crimes by a jury. The government is not required to present enough evidence to exclude every hypothesis of innocence. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc). The jury is free to choose among all reasonable constructions of the evidence. *United States v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992). "In evaluating the sufficiency of the evidence, [the court] consider[s] the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in support of the verdict." *United States v. Ivy*, 973 F.2d 1184, 1188 (5th Cir. 1992). In this case there was more than sufficient evidence to convict Marshall. This claim fails.

### S.    Request for Release Pending Appeal

This claim was addressed in Section O above, and the Court will not repeat that discussion again here. For the reasons set forth there, this argument fails.

### T.    Victim of Racially Biased Selective Prosecution

Marshall asserts that he is a victim of a racially-motivated prosecution because, even though he was in jail, he still had a right to file an income tax return. First, as stated before, Marshall was not prosecuted for filing a tax return while in jail, but for filing fraudulent tax returns and helping to prepare fraudulent tax returns for others. Second, the government has broad discretion in enforcing federal criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Prosecutorial

decisions are supported by a "presumption of regularity" and "courts presume prosecutors have properly discharged their official duties absent clear evidence to the contrary. *Id.* A defendant has a heavy burden of establishing a selective-prosecution claim. *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir. 1978). A defendant must first "make a prima facie showing that he was singled out for prosecution while others similarly situated who committed the same acts were not prosecuted." *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984). In addition, the defendant "must demonstrate that the government's selective prosecution was constitutionally invidious in that it rested upon such impermissible considerations race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* Because Marshall has failed to present any evidence to rebut the presumption of regularity supporting the government's decision to prosecute him for violating 26 U.S.C. § 7212(a) and 26 U.S.C. § 7206(2), this claim fails.

To the extent Marshall claims disparate treatment, this claim also fails. To be successful on this claim, Marshall "must demonstrate that similarly situated persons are subject to disparate treatment without a rational basis." *United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996). Marshall has not made such a showing. As for the prosecutor's conduct, Marshall points to nothing which demonstrates or establishes that the government used improper methods in securing a conviction against him. This claim provides no basis for relief and should be denied.

## U.      Retaliation for Exercising First Amendment Rights

Marshall asserts that he was prosecuted in retaliation for his activities as a jailhouse lawyer and instructor while incarcerated in Dallas, Texas, all in violation of the First Amendment. He also argues that he has a right to tax forms because they are not "contraband."

First, this claim is effectively a claim pursuant to 42 U.S.C. § 1983 for First Amendment retaliation. Such a claim has no place in a motion pursuant to 28 U.S.C. § 2255. Moreover, even if the claim was properly raised, for Marshall to establish a First Amendment retaliation claim, he must prove (1) that he engaged in protected activity, (2) that the government responded with retaliation, and (3) that the protected right was the reason for the government's retaliation. *Anderson v. Davila*, 125 F.3d 148, 161 (3rd Cir. 1997). Marshall offers no evidence that he was prosecuted in retaliation for exercising any First Amendment right. Marshall was arrested, indicted, prosecuted, and found guilty by a jury because the evidence established beyond a reasonable doubt that he had, in at least forty instances, violated federal criminal statutes. Additionally, the district court limited Marshall's access to tax forms, because the last time he was incarcerated he used such forms to defraud the Internal Revenue Service and expressed in open court his willingness to do so again. Although not "contraband" it is within the district court's discretion to limit Marshall's access to these materials while in custody.

## V.    Appellate Deficiencies

Marshall's next argument appears to be that any deficiencies in his appeal and ultimate dismissal of his appeal was due to lack of funds. The Court has already addressed that claim in Section F above.

Additionally, any deficiencies in Marshall's appeal were purely his own responsibility. Marshall filed his notice of appeal on February 28, 2007. *See* Doc. No. 191. On March 13, 2007, Marshall filed a Motion for Request and Payment of Transcripts (Doc. No. 197), which the district court granted on March 23, 2007. *See* Doc. No. 200. On May 29, 2007, and August 13, 2007, the transcripts were prepared and filed in the district court. On September 14, 2007, the district clerk's

office mailed Marshall a letter advising him that the Record on Appeal in his case had been forwarded to Mr. Tommy Hale, Case Manager, Fifth Circuit Court of Appeals. Marshall was advised that Mr. Hale would make the record available to him for his use in preparing his appellate brief. Marshall was given specific instructions to return the record on appeal to the Fifth Circuit Court of Appeals when he filed his brief. Marshall apparently never requested the record, nor did he file a brief with the Court. On January 11, 2008, the Fifth Circuit Court of Appeals dismissed Marshall appeal because he failed to file a brief and record excerpts with the Court. The deficiencies in his appeal and the subsequent dismissal of his appeal were not based on his lack of requested funds, but on his failure to timely prepare and submit his appellate brief. This claim fails.

## W.     Wizard Services Restoration Fund Act

Perhaps Marshall's most novel claim in a sea of novel claims is his assertion that through legislation he has denominated "the Wizard Services Restoration Fund Act"—supposed proposed legislation that he himself has authored and dated September 2010—that he is entitled to various monies related to the fraudulent tax returns he filed. The Court will not honor this ridiculous argument with any further discussion —it is baseless.

## X.     Compensation for Wrongful Incarceration

Marshall argues that he is entitled to compensation for his "wrongful incarceration" in both state and federal prison. A section 2255 motion is not the proper vehicle for seeking compensatory damages for wrongful incarceration. *See Davis v. Caskey*, 2998 WL 5117547 (S.D. Miss., Nov. 28, 2008) (Section 2254 not proper vehicle for seeking compensatory damages for wrongful incarceration). This claim is without merit and should be dismissed.

Moreover, to recover damages for an allegedly unconstitutional conviction or sentence, or for other harm caused by actions whose unlawfulness would render a person's conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A claim for damages based on a conviction or sentence that has not been so invalidated does not state a cause of action. The principle that civil tort actions are not appropriate vehicles for challenging actions relating to the validity of confinement applies to lawsuits that necessarily require a plaintiff to prove facts which would imply the unlawfulness of his conviction or confinement. *Id.* at 486.

A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). Marshall does not assert that the *Heck* requirements have been satisfied; therefore, *Heck* bars him from proceeding with this lawsuit.

**Y.    Prosecutorial Misconduct**

Marshall asserts that his due process rights were violated because of the prosecutors' misconduct. Of course, any prosecutorial misconduct claim could have been raised on direct appeal. It was not, and, as a result, is procedurally barred. *See United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc). Moreover, any such claim would be without merit. To prove a claim for prosecutorial misconduct, Marshall must show that the conduct complained of so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In this case, Marshall seems to allege that the prosecution

misstated both the law and evidence at his trial. However, Marshall points to no specific instances where this occurred. Since he has failed to offer any evidence of how the alleged misconduct affected the outcome of his trial, the claim is baseless. *See United States v. Smith*, 2006 WL 2803055 (E.D. La. 2006).

**Z.     Judicial Misconduct**

Marshall alleges that Judge Yeakel exhibited bias against him during the course of the pre-trial and trial proceedings in the district court. As with the prosecutorial misconduct claim, this argument could have been raised on direct appeal and was not, and thus is procedurally barred. *See United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc).

Further, Marshall points to no particular instances of judicial bias. There is no evidence in the record that Marshall moved to recuse Judge Yeakel. A party may request the recusal of a judge if "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003). Recusal is required where the moving party demonstrates that an objective reasonable person fully informed of the underlying facts would "entertain significant doubt that justice would be done absent recusal." *United States v. Lauersen*, 348 F.3d 329, 334 (2d Cir. 2003). The Fifth Circuit has emphasized that the "origin of the judge's alleged bias is of critical importance," explaining that events occurring or opinions expressed in the course of judicial proceedings "rarely require recusal" and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Andrade*, 338 F.3d at 455 (internal citations omitted). Even if he had moved for recusal, Marshall has failed to point to any occurrence outside of the trial and pre-trial setting that is evidence of bias. Marshall has failed to show judicial misconduct, and failed to show

judicial misconduct that influenced the outcome at trial and/or deprived Marshall of due process. This claim fails.

### AA.    Section 2241 Argument

Marshall next argues that he is entitled to challenge the sentence in the instant case pursuant to § 2241 because his current sentence was enhanced by a prior conviction.  He asserts that this prior sentence has not been served in its entirety and thus he is entitled to challenge his current sentence. Marshall's argument is unclear, but the Court believes the gist is that he is once again seeking federal credit for time served in state jail.  The Court has already addressed this argument to a large extent in Section C above.  To the extent Marshall challenges the correctness of the sentence, he is not entitled to raise this claim under § 2241 unless he can demonstrate that he is entitled to relief under the "savings clause" of 28 U.S.C. § 2255(e).  He has failed to so.  *See Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001).  Thus, this argument cannot be raised in a 2241 proceeding.

Marshall's argument is also flawed on the merits.  The district court generally has broad discretion in choosing to sentence a defendant to a consecutive or concurrent sentence. *United States v. Johnson*, 40 F.3d 1079, 1082 (10th Cir. 1994) (citing 18 U.S.C. §§ 3553(a), 3584(a), & 3584(b)). This discretion, however, is limited by § 5G1.3 of the United States Sentencing Guidelines when the court seeks to impose a sentence upon a defendant who is subject to an undischarged term of imprisonment.  *Id.*  In this case, Marshall was not in fact subject to an undischarged term of imprisonment.  He was indicted and arrested for his federal crimes after his release from state custody.  Section 5G1.3 does not apply because it applies only in instances where the Petitioner has already served time for the same conduct or course of conduct.  Here, the imposition of Marshall's

tax fraud sentence is separate from any prior state sentence, and related to a separate course of conduct.

To the extent Marshall is arguing that he is entitled to credit on his federal sentence for the time he spent in state custody prior to the imposition of his federal sentence, this argument also fails. "A federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980). *See also Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006) (federal sentence could not commence prior to date of sentencing); *Demartino v. Thompson*, 116 F.3d 1489, 1489 (10th Cir. 1997) (same). Marshall's federal sentence commenced on February 16, 2007, and thus he could not begin serving it until that date (as already addressed in detail in Section C above). This claim is without merit.

### BB. Request for Immediate Release and/or Preliminary Injunction

Marshall lastly moves for immediate release to a halfway house as of April 22, 2008. The Court addressed this argument in Section O. Additionally, Marshall has provided no factual or legal basis for his release.

## III. RECOMMENDATION

Based on the above, the Court **RECOMMENDS** that the District Court **DENY** Jonathan Marshall, Sr.'s Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Clerk's Doc. No. 235) **WITH PREJUDICE.**

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C.

§ 2253(c) (1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000).  In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the denial of the movant's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, a certificate of appealability shall not be issued.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of March, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE